Filed 2/26/13  P. v. Ayala CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B233612 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA065579) |
| v. | |
| JOSE A. AYALA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael Jesic, Judge.  Affirmed as modified.

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II and Mark E. Weber, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Jose Ayala was convicted, following a jury trial, of one count of false imprisonment by violence in violation of Penal Code section 236,[1] one count of kidnapping in violation of section 207, two counts of assault with a firearm in violation of section 245, subdivision (a)(2), one count of making criminal threats in violation of section 422 and one count of kidnapping for ransom in violation of section 209, subdivision (a). The jury found true the allegations that a principal was armed with a firearm in the commission of the false imprisonment, criminal threats and kidnapping offenses within the meaning of section 12022, subdivision (a)(1).

The trial court stayed sentence on the false imprisonment and section 207 kidnapping pursuant to section 654. The court imposed a term of life in prison with the possibility of parole for the kidnapping for ransom conviction. The trial court imposed a determinate term of five years in state prison, consisting of the mid-term of three years for the first assault conviction, plus one year (one-third the midterm) for the second assault conviction, plus one year (one-third the midterm plus one-third of the firearm enhancement term) for the criminal threats conviction.

Appellant appeals from the judgment of conviction, contending that the trial court erred in failing to stay sentence on the criminal threats and two assault convictions pursuant to section 654. He further contends that his conviction for false imprisonment must be stricken, as it is a lesser included offense of kidnapping. Respondent contends that the restitution fine shown in the abstract of judgment should be corrected to reflect the amount imposed by the trial court at sentencing. We agree that one of the assault convictions must be stayed pursuant to section 654 and the conviction for false imprisonment by violence stricken. We also agree that the amount of the restitution fine should be stricken. We affirm the judgment of conviction in all other respects.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Facts

In June 2010, 15-year-old I.P. was staying with Marina Gonzalez in an apartment at 6859 Laurel Canyon Boulevard.  I.P. was a runaway.  Appellant lived a few doors down in the same building.  One day, I.P. and a friend entered appellant's apartment to look for I.P.'s cell phone.  I.P. found the phone in appellant's bedroom with the battery removed, became angry and decided to steal various items from appellant's apartment, including laptop computers, some video game consoles, an iPod, and a phone.

A few days later, a man named Woody came to Gonzalez's apartment looking for I.P.  Woody and I.P. went out into the hallway.  Woody asked her where the stolen items were.  When I.P. tried to go back into Gonzalez's apartment, Woody grabbed her arm.  Woody pulled out a revolver, placed it against I.P.'s ribs and he walked her, holding her arm, down to appellant's apartment.  Woody told I.P. that she was not going anywhere "until we find our stuff."  Inside appellant's apartment, appellant placed I.P. in a chair and tied her hands behind her back.  Woody kept asking I.P. where his missing items were.

Appellant untied I.P.'s hands and told her to make a phone call to have the stolen items returned.  I.P. could not recall a number to call.  Woody broke the phone in half and appellant retied I.P.'s hands.  Woody demanded that I.P. tell them where the stolen items were and hit her on the side of her face with the hand that was holding the revolver.  Woody later gave the revolver to a third man, codefendant Douglas Castaneda.  Castaneda then pointed the revolver at I.P. and threatened to kill her if she did not tell them where the stolen items were.

After about 15 or 20 minutes, appellant and the other men decided to move I.P. to a body shop that appellant owned.  The shop was three or four miles from appellant's apartment.  Appellant put a blanket over I.P.'s head and walked her from his apartment to his SUV.  At the same time, Woody held a gun to I.P.'s head and threatened to shoot her if she screamed.  Appellant drove, with I.P. in the front passenger seat next to him.  Woody sat in the back.

At the body shop, appellant and Woody chained I.P. to a chair.  Castaneda arrived, got a shotgun from the shop's bathroom, pointed the shotgun at I.P. and asked I.P. where

3

the stolen items were. Castaneda also told I.P. that "if I mention this to the cops that he was going to kill me and my whole family."

The men eventually told I.P. they were going to let her go. They told her that if she did not return with the stolen items in two days, or if she went to the police, they would kill her and her family. They told her to write down the names of her family members and their address. She had to do this twice, then Woody compared the two lists to see if they matched. Castaneda again threatened I.P. that "he will kill my family if I tell the cops or if anything happens to his boys . . . ."

Appellant and Woody took I.P. to appellant's SUV, drove her a few blocks away from the body shop, told her to get out and left her on the side of the road. I.P. flagged down an elderly couple who gave her a ride and dropped her off near Gonzalez's apartment building. I.P. went to the apartment, gathered her belongings and left.

For the first few days after her abduction, I.P. did not tell anyone what had happened because she was scared by the threats to kill her and her family. Then, I.P. turned herself in. A day after turning herself in, I.P. reported her abduction to a mental health counselor who called the police.

Los Angeles Police Department officers investigated I.P.'s claims, searched appellant's apartment and body shop and arrested appellant on July 14, 2010.

Appellant did not present any evidence at trial. His codefendant Castaneda called several witnesses. Castaneda was found not guilty of any of the charges against him, and the testimony of his witnesses is not relevant to any issue on appellant's appeal, and so that testimony is omitted.

## Discussion

1. Section 654

Appellant contends that the trial court violated section 654 when it imposed separate sentences on the kidnapping for ransom, assaults and criminal threats convictions. We agree in part.

4

Section 654 provides in pertinent part:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  (§ 654, subd. (a).)

"'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor.  If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'  [Citation.]"  (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.)

In determining whether section 654's prohibition against double punishment applies, courts must examine the defendant's objective in violating different provisions of the Penal Code.  (*People v. Britt* (2004) 32 Cal.4th 944, 952.)  "[T]here must be evidence to support the implied finding of the trial court that this defendant formed a separate objective and intent for the several offenses for which he was sentenced."  (*People v. Laster* (1971) 18 Cal.App.3d 381, 394.)

Appellant contends that there is evidence of only one intent for all of the crimes.  His intent in kidnapping I.P. was to get his property back, and the assaults and criminal threats were made to ensure that she returned with his property after she was released to retrieve the property.  Respondent contends that there is evidence of two different objectives.  Appellant wanted to get his property back, but he also wanted to avoid detection and conviction after I.P. was released.  We agree with respondent in large part.

Appellant received four separate sentences.  He was sentenced consecutively for kidnapping for ransom, two counts of assault with a firearm and one count of criminal threats.  One of the assault convictions must be stayed pursuant to section 654.

Appellant was convicted of kidnapping for ransom, reward, or extortion in violation of section 209, subdivision (a).[2] Extortion is the obtaining of property from another, with her consent, induced by a wrongful use of force or fear. (§ 518.) Here, the objective of appellant's kidnapping for ransom or extortion was to get his property back from the kidnap victim, I.P. The first assault, using a revolver in the apartment, was accompanied only by demands that the victim return the property, and can only be viewed as having the objective of getting appellant's property back. The assault was in apparent response to the victim's refusal to tell appellant where his property was or to call someone and tell them to bring the property back and was clearly designed to get the victim to return the property. It was not a gratuitous act of violence but was part of the extortion. (Compare *People v. Nguyen* (1988) 204 Cal.App.3d 181, 190-191 [§ 654 did not apply when robber shot victim *after* victim gave up valuables and was lying on floor] and cases cited therein; see also *People v. Cardenas* (1982) 31 Cal.3d 897 [§ 654 did not apply when robber shot one victim in the back *for no apparent reason* while another victim opened safe].)

The extortion, in turn, was the object of the kidnapping. A violation of section 209 occurs when a person kidnaps "another person by any means whatsoever with intent to hold or detain, or who holds or detains, that person for ransom, reward or to commit extortion." (§ 209, subd. (a).) As such, the assault cannot be punished separately. (See *People v. McKinzie* (2012) 54 Cal.4th 1302 [carjacking and kidnapping for robbery could not be punished separately when prosecutor argued that taking the victim's car was the object of the robbery]; *People v. Lewis* (2008) 43 Cal.4th 415 [kidnappings for robbery and robberies of the kidnap victims could not be punished separately when the crimes were committed with the single objective of robbing the victims of their cars and or cash from their bank accounts].)

---

[2] Appellant was also convicted of simple kidnapping in violation of section 207. Simple kidnapping carries a sentence of three, five or eight years in state prison. (§ 208.) Sentence on the simple kidnapping conviction was stayed in favor of kidnapping for ransom conviction which carries a life sentence and so it is not at issue.

The second assault, involving a shotgun at the body shop, was made concurrently with threats to kill the victim and her family if the victim contacted police and thus had the additional objective of avoiding detection. Since there was a separate objective for this assault, it may be sentenced separately.

Criminal threats to the victim were also made at the body shop and also had the additional intent of avoiding detection. Many of the criminal threats were made after the men decided to let the victim go and after the victim used the bathroom. I.P.'s testimony about events after she returned from the bathroom focused on the men's verbal threats.[3] These threats were designed, at least in part, to force her to write down her name and address and her family's name. As the prosecutor argued, the kidnappers viewed this writing as "insurance" for the future. This, the criminal threats had a different and an additional objective than the assault with the shotgun. Further, the two acts can be viewed as divided by the men's decision to end the kidnapping. Thus, the two acts were not part of an indivisible course of conduct and could be sentenced separately. (See *People v. Trotter* (1992) 7 Cal.App.4th 363, 366-368 [three shots fired at pursuing officer with intent to deter pursuit could be punished separately under section 654].)

2. False imprisonment

The trial court stayed sentence on the false imprisonment by violence conviction pursuant to section 654. Appellant contends that false imprisonment is a lesser included offense of kidnapping, and that both convictions cannot stand. He contends that such double conviction violates his right to due process. Respondent contends that appellant has forfeited this claim by failing to raise it in the trial court. We agree that the conviction for false imprisonment should be stricken. We see no forfeiture.

As the California Supreme Court has explained: "[T]his court has long held that multiple convictions may *not* be based on necessarily included offenses. [Citations.] We

---

[3] The victim's testimony about events prior to the bathroom break focused on the shotgun.

recently affirmed this policy in *People v. Cole* (1982) 31 Cal.3d 568, in which the defendant was convicted of robbery and grand theft for the same act. We held the grand theft conviction must be reversed 'because it is a lesser necessarily included offense of the crime of robbery.' [Citation.]" (*People v. Pearson* (1986) 42 Cal.3d 351, 355.)

This Court long ago found that false imprisonment is a lesser included offense of kidnapping. (*People v. Apo* (1972) 25 Cal.App.3d 790, 796.) Thus, as our colleagues in the First District Court of Appeal recognized, "[i]f both the false imprisonment count and kidnaping count relate to the same act, double conviction as well as double punishment is prohibited." (*People v. Ratcliffe* (1981) 124 Cal.App.3d 808, 819-820.)

Here, the false imprisonment charge and the kidnapping charge were based on the same act.[4] Accordingly, the false imprisonment conviction must be stricken.

Respondent bases its forfeiture argument on the dissent to a case decided by this Court more than twenty years ago. (*People v. Magana* (1991) 230 Cal.App.3d 1117, 1122, fn. 1 [conc. & dis. opn. of Turner, P. J.].) The majority opinion is *Magana* had remained good law for over 20 years. We decline respondent's invitation to overrule it and adopt the position of the dissent. We do not find respondent's other citations, to a family law case and a civil case, to be persuasive.


3. Restitution fine

Respondent contends that the abstract of judgment should be corrected to reflect the amount imposed by the trial court at the sentencing hearing. We agree.

"The oral pronouncement of judgment controls over any discrepancy with the minutes or the abstract of judgment. [Citations.]" (*People v. Sharret* (2011) 191 Cal.App.4th 859, 864.) The trial court imposed a restitution fine of $200 at the sentencing hearing. The minute order and abstract of judgment show a fine of $100.

---

[4] The prosecutor even argued that if the jury convicted appellant of kidnapping or kidnapping for ransom, then "by default" or "automatically," appellant was guilty of false imprisonment.

Disposition

The conviction for false imprisonment by violence (count 1) is stricken. Sentence is stayed on the count 3 assault with a firearm conviction pursuant to section 654. Sentence on the count 4 assault conviction is now the midterm of three years. Appellant's determinate sentence is now four years in state prison. The $100 restitution shown in the abstract of judgment is ordered corrected to $200 to reflect the amount of the fine imposed by the trial court at sentencing. The judgment of conviction is affirmed in all other respects. The clerk of the superior court is directed to prepare an amended abstract of judgment reflecting these changes and corrections and to deliver a copy to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ARMSTRONG, Acting P. J.


We concur:



MOSK, J.



KRIEGLER, J.

9