[No. B042725. Second Dist., Div. Five. May 20, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
JESUS MAGANA, Defendant and Appellant.

COUNSEL

Stephen Shaiken, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Donald E. de Nicola and Lauren E. Dana, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BOREN, J.—Jesus Magana appeals from the judgment entered following a jury trial in which he was convicted of kidnapping (Pen. Code, § 207, subd. (a)), false imprisonment (Pen. Code, § 236) and two counts of forcible rape (Pen. Code, § 261, subd. (2)) for which the victim was kidnapped (Pen. Code, §§ 207, 667.8, subd. (a)).[1] He was sentenced to the three-year middle term for false imprisonment, and consecutive eight-year upper terms for each of the forcible rapes, with a three-year enhancement for kidnapping for purpose of rape for a total term of twenty-two years. A five-year middle term for kidnapping was stayed pursuant to Penal Code section 654. He was given credit for 191 days of actual custody plus 96 days of conduct credits, for a total of 287 days' credit. He contends: "I. The false imprisonment conviction must be stricken as an improper double conviction since false imprisonment is a lesser included offense of kidnapping . . . . II. In the event the false imprisonment conviction is not stricken, sentence must be stayed under Penal Code section 654 . . . . III. The evidence was insufficient to support a conviction of kidnapping . . . . IV. The court erred in finding that the two rapes were committed on separate occasions . . . . V. Appellant was not given full credit for time served and conduct credit . . . ."

Viewed in accordance with the usual rules on appeal (*People v. Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110]), the evidence established that shortly after 8 p.m. on September 9, 1988, Maria N. was walking home from work along Anaheim Street when she heard someone shout. She ignored the shouting and continued walking. Appellant approached and asked if he could accompany her. She told him to go away and not bother her but he continued to follow her. He told her he wanted to help her and he knew the location of her destination. While she was walking very fast on Anaheim towards Figueroa, she felt something sharp like a knife in her ribs. Appellant told her if she did not keep walking he would kill her. They walked past Harbor College and he pushed her to a little embankment inside of a park. She began to scream and he put a piece of rope around her neck, hit her in the nose and told her to "shut up." The rope was strangling her and she put the middle finger of her right hand inside of the rope so that she could breathe.

Appellant led her through the park for about 15 minutes before tying her to a tree. When he could not get her clothes off while she was tied to the tree,

---

[1] Appellant was also charged with, but acquitted of, sexual penetration by a foreign object (Pen. Code, § 289) and sodomy by use of force (Pen. Code, § 286, subd. (c)). The jury was also unable to reach a verdict as to whether defendant was guilty of attempted forcible oral copulation, and a mistrial was declared.

he untied her, threw her on the ground and ordered her to take her clothes off. She complied and, while he was raping her, she screamed and tried to push him off, scratching his back. He then turned her over, put her on her knees and inserted his finger into her anus before inserting his penis. After turning her over on her back again, he raped her a second time. He placed his penis near her mouth and she pushed it away.[2]

After forcing her to get dressed, appellant made her continue to walk with him through the park and held her hand. She asked him to let her go but he told her she could tell on him and he was going to kill her. While looking for a way to escape, she said she would be his sweetheart and they could continue seeing each other. They walked for about 15 minutes before she saw 2 policemen. She then grabbed him by the shirt, called him names and ran towards the police, crying. There were bruises or red marks on her neck. Appellant was arrested and the police found that he had a comb with a point in his possession.

Several days later Ms. N. returned to the park with Los Angeles Police Detective Jeffrey Christ, and identified the area of the incident, identified the rope appellant had used and showed him the path on which she was taken. The officer estimated the distance from Avalon Street and Anaheim to Figueroa as a little over a mile, the distance from Figueroa and Anaheim to the edge of the park at "L" Street as about a half-a-mile, and the distance between the parking lot area just off "L" Street and Figueroa to a marsh area in the park along foot paths around to the end of the parking lot area as 8/10 mile.

A medical examination of Ms. N. revealed raised red swollen marks on her neck and around her rib area, her third finger was swollen and red, and there were abrasions on her left knee. A vaginal examination resulted in findings consistent with what Ms. N. had reported. Ms. N. indicated to the doctor that there had been no penetration of her rectum by appellant's finger or penis, and also answered no when asked about oral copulation of the genitals.

Appellant denied the charges against him and testified Ms. N. came out of the park and asked for money as he was walking home. He told her he did not have any. When they were near the policemen, she grabbed and pushed him.

■ The contention that the false imprisonment conviction must be stricken because appellant was also convicted of kidnapping is well taken.

---

[2]Ms. N. later testified that the second rape was the last act of appellant.

Respondent concedes that false imprisonment is a necessarily lesser included offense of kidnapping and the conviction must be vacated. (*People* v. *Patrick* (1981) 126 Cal.App.3d 952, 965 [179 Cal.Rptr. 276]; *People* v. *Ratcliffe* (1981) 124 Cal.App.3d 808, 819-821 [177 Cal.Rptr. 627].)

■ Appellant's contention that there was insufficient evidence of asportation, apart from that incidental to the rape, to sustain a separate kidnapping conviction is without merit. It amounts to no more than a request for this court to reweigh the evidence and substitute its judgment for that of the jury. That is not the function of the appellate court. (*People* v. *Barnes, supra*, 42 Cal.3d at p. 303.) Although the record is not clear on the exact distance involved, it is apparent that the asportation was substantial and covered at least a half a mile to the park, with a lengthy walk into the park thereafter. Clearly, the distances involved were not trivial nor merely incidental to the rapes. (See *People* v. *Stanworth* (1974) 11 Cal.3d 588, 600-603 [114 Cal.Rptr. 250, 522 P.2d 1058]; cf. *People* v. *Green* (1980) 27 Cal.3d 1, 66-67 [164 Cal.Rptr. 1, 609 P.2d 468].)

■ Appellant's contention that the trial court erred in finding that the two rapes were committed on separate occasions is without merit. (*People* v. *Harrison* (1989) 48 Cal.3d 321, 325-334 [256 Cal.Rptr. 401, 768 P.2d 1078].) From the record, it appears that there was a break in time between the two rapes. Although appellant was not convicted of the other sexual charges, it is apparent that other activity occurred in the interim and, as the court found, the "two acts of rape were definitely distinct and independent of each other."

■ Appellant's contention that he was not given full credit for actual custody and conduct is well taken. He was arrested September 9, 1988, and sentenced on April 10, 1989. The record reflects that appellant was remanded to custody after every court appearance and is entitled to 214 days of actual custody, plus 106 days of conduct credit, for a total of 320 days. (*People* v. *Smith* (1989) 211 Cal.App.3d 523, 527 [259 Cal.Rptr. 515].)

The judgment is modified by vacating the conviction for false imprisonment (count II) and to reflect credit for 214 days of actual custody, plus 106 conduct credit, for a total of 320 days' precommitment credit, and, as modified, is affirmed.

Ashby, J., concurred.

TURNER, P. J., Concurring and Dissenting.—I respectfully dissent from that portion of the majority opinion that reverses and dismisses defendant's conviction for felony false imprisonment. I concur in the remainder of the opinion.

Defendant's contention that he may not be convicted of false imprisonment because it is a necessarily included offense of kidnapping and the Attorney General's concession in that regard are without merit.[1] The kidnapping and the felony false imprisonment were separate acts which, under the unique set of facts present in this case, constituted distinct crimes. The felony false imprisonment was not an offense included within the kidnapping. Penal Code section 20 states, "In every crime or public offense there must exist a union, or joint operation of act and intent . . . ." In the present case, there is no doubt defendant intended to falsely imprison Maria N.; he tied her to the tree. Rather, the issue is whether separate acts occurred so as to give rise to liability to false imprisonment.

Substantial evidence supports the implied finding of the jurors that defendant committed a felony false imprisonment separate and apart from the kidnapping. An act is essential for the existence of a crime. (Perkins, Criminal Law (3d ed. 1982) ch. 6, § 1, p. 605.) One commentator has noted, "The word 'act' might be defined . . . in a narrow sense to mean only voluntary bodily movement." (1 LaFave & Scott, Substantive Criminal Law (1986) § 3.2(c), p. 275.) In *People* v. *Green* (1980) 27 Cal.3d 1, 53 [164 Cal.Rptr. 1, 609 P.2d 468], the Supreme Court held, "Under [Penal Code] section 20, the defendant's wrongful intent and his physical act must concur in the sense that the act must be motivated by the intent." In the present case, when defendant concluded the lengthy asportation of Maria N., a fair inference from the evidence was that defendant formed a separate intent to degrade her by tying her to a tree. That intent manifested itself in conduct which was materially different from the kidnapping. During the kidnapping,

---

[1] I wish to emphasize that I do not believe this issue is properly before this court. No objection to the purported lesser included nature of the felony false imprisonment charge was raised in the trial court. Therefore, in my view, the issue has not been preserved for appellate purposes. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1138 [275 Cal.Rptr. 797, 800 P.2d 1227]; *Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261].) The prior decisions of the California Supreme Court which have held that a defendant may not be convicted of a greater and lesser offense have not addressed the issue of waiver when no objection was interposed in the trial court to the conviction of both the greater and lesser included crimes. Therefore, in the absence of a specific Supreme Court directive that this issue can be raised on appeal despite the failure to object in the trial court, I believe the general waiver rule and policy enunciated in *In re Marriage of Arceneaux, supra*, 51 Cal.3d at page 1138 and *Doers* v. *Golden Gate Bridge etc. Dist., supra*, 23 Cal.3d at pages 184-185, footnote 1, should apply.

In *People* v. *Toro* (1989) 47 Cal.3d 966, 973-975 [254 Cal.Rptr. 811, 766 P.2d 577], our Supreme Court held that a defendant could, by failure to object, waive the right to litigate on appeal the correctness of a conviction of a nonlesser included offense. In *Toro*, the waiver rule applied to a defendant's due process rights to notice of the charges. (*Id.* at p. 973.) If the defendant in *Toro* waived, by failure to object in superior court, his right to raise an issue concerning his conviction of a nonlesser included offense on appeal, then defendant in this case waived his right to raise the issue on appeal that he was convicted of a purportedly lesser included offense.

Maria N. was being moved. When defendant formed the separate intent to tie her to the tree and acted on that newly developed mental state, the movement, an essential element of the kidnapping (*People* v. *Knowles* (1950) 35 Cal.2d 175, 180 [217 P.2d 1]), came to a complete halt. The key point is that a separate intent was formed and conduct different from that which was essential to a kidnapping ceased. In other words, to paraphrase Justice Mosk in his opinion in *People* v. *Green, supra*, 27 Cal.3d at page 53, the act of felony false imprisonment was "motivated by the [separate] intent." Therefore, substantial evidence supports the trier of fact's implied conclusion that a false imprisonment, which was not necessarily included within the kidnapping, occurred in the present case.

This conclusion is supported by two additional considerations. First, the deputy district attorney squarely presented this issue to the jurors. During argument, she said: "Assault two, false imprisonment. This charge is related to the incident where the defendant tied her to the tree down by the waterline. She testified he had the rope tied around her neck and that he then wrapped it around the tree and tied her hands behind the tree and tried to do something to her. The act of tying her to the tree is false imprisonment. [¶] Look at the elements: [¶] [1.] violate liberty of another by restraining, confining, or detaining the person. Clearly she was restrained and confined. Very definitely. [¶] The second element, was this done by violence or menace[?] Now, the law describes menace as a threat of harm, express or implied, by word of [*sic*] act. All of that exists. [¶] Therefore, ladies and gentlemen, I would submit the People have proven false imprisonment beyond a reasonable doubt." Clearly, the People's theory was presented directly to the trier of fact. Second, although not entirely conclusive, our Supreme Court has made it clear that separate sexual acts which occur in close proximity to one another are distinct crimes. (*People* v. *Harrison* (1989) 48 Cal.3d 321, 325-334 [256 Cal.Rptr. 401, 768 P.2d 1078].) In tying Maria N. to the tree, defendant engaged in a crime which was separated in terms of the sexual acts and at the conclusion of the asportation. Given the totality of the circumstances, I would affirm the felony false imprisonment conviction.

In the alternative, defendant contends that it was violative of Penal Code section 654 to sentence him for both felony false imprisonment and the enhancement pursuant to Penal Code section 667.8 for kidnapping in order to commit a sexual offense.[2] In determining whether a sentence violates Penal Code section 654, an appellate court is "required to view the evidence

[2]Penal Code section 667.8, subdivision (a) provides: "Except as provided in subdivision (b), any person convicted of a felony violation of Section 261, 264.1, 286, 288a, or 289 who,

in a light most favorable to the judgment." (*People* v. *Williamson* (1979) 90 Cal.App.3d 164, 172 [153 Cal.Rptr. 48].) In *People* v. *Coleman* (1989) 48 Cal.3d 112, 162 [255 Cal.Rptr. 813, 768 P.2d 32], our Supreme Court held, " 'The defendant's intent and objective are factual questions for the trial court; [to permit multiple punishments,] there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced. [Citation.]' " The false imprisonment and the kidnapping may be separately punished. When defendant untied Maria N., he had committed a completed felony false imprisonment. Tying Maria N. to the tree in order to degrade her was not the same act as the kidnapping or the rapes and involved separate intents. Therefore, Penal Code section 654 is inapplicable to the present case. (*People* v. *Harrison, supra*, 48 Cal.3d at pp. 335-338.) The cases involving kidnapping or felony false imprisonment and rape relied upon by defendant do not involve the presence of an intentionally distinct act of degradation which also constituted a crime such as tying the victim to a tree. Under these circumstances, multiple sentencing for felony false imprisonment and sexual assault with a kidnapping enhancement was appropriate. (*People* v. *Ratcliffe* (1981) 124 Cal.App.3d 808, 819 [177 Cal.Rptr. 627].) Since substantial evidence supports the sentencing court's explicit determination that the felony false imprisonment was a "separate act of violence," the sentence for felony false imprisonment must be affirmed.

for the purpose of committing that sexual offense, kidnapped the victim in violation of Section 207, shall be punished by an additional term of three years."