[No. B075755. Second Dist., Div. Two. July 21, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
LAMAR DONNELL THOMAS, Defendant and Appellant.

Counsel

Wesley A. Van Winkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Kenneth C. Byrne and Juliet H. Swoboda, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**BOREN, P. J.**—In this case, we hold that a defendant may be convicted of only one kidnapping offense where there is but one abduction and detention of a solitary victim.

Appellant, Lamar Donnell Thomas, was convicted by a jury of five counts of forcible rape (Pen. Code, § 261, subd. (a)(2)), three counts of forcible oral copulation (Pen. Code, § 288a, subd. (c)), one count of sodomy (Pen. Code, § 286, subd. (c)), two counts of kidnapping for robbery (Pen. Code, § 209, subd. (b)), one count of robbery (Pen. Code, § 211), and one count of assault with a deadly weapon with the infliction of great bodily injury (Pen. Code, §§ 245, subd. (a), 12022.7). The jury also found true related firearm use enhancements (Pen. Code, §§ 12022.3, 12022.5.) as to each count. The court sentenced appellant to prison for consecutive determinate terms totaling 99 years and 4 months, plus a consecutive term of life with the possibility of parole as to 1 of the kidnapping for robbery counts and a concurrent term of life with the possibility of parole as to the other kidnapping for robbery count.

Contrary to appellant's contention, substantial evidence supports the court's finding of good cause to dismiss a juror. However, as appellant urges, we find that the evidence is sufficient to establish only one of the two kidnapping for robbery charges, and that a robbery count must be stayed pursuant to Penal Code section 654.

Facts

In the early evening of November 2, 1992, as Jennifer M. approached her car in the parking structure of the Long Beach Mall, appellant pointed a semiautomatic gun at her. He demanded her car keys and told her to get into the car. Jennifer M. moved over to the passenger's seat, and appellant sat in

the driver's seat. Appellant asked Jennifer M. how much money she had and then drove out of the parking garage. Appellant took her wallet with credit cards and $35 in it. He said that he also wanted her automatic teller machine (ATM) card, but she did not have it with her. Appellant drove Jennifer M. toward the Redondo Beach apartment where she said she had her ATM card.

Before arriving at the apartment, appellant parked the car on a side street, ordered Jennifer M. into the backseat and removed her clothes. Appellant then repeatedly raped her, forced her to engage in oral sex, and threatened to kill her. Appellant held the gun in his hand or had it within his reach, and at one point put the gun next to her genital area. When they finally drove to her apartment, appellant told Jennifer M. to bring out her ATM card. He stood outside her apartment. She went inside and called the police. By the time the police arrived, appellant had fled.

Two weeks later in the same Long Beach Mall parking garage, appellant approached Charye S.'s car. He pointed a gun at her and told her to move into the passenger's seat. Appellant demanded her ATM card and the personal identification number, which she gave him. He also asked for the personal identification number of her credit card, but she did not remember it. Appellant told Charye S. to get into the backseat of her car. He repeatedly threatened to kill her and told her "I'm going to rape you." Appellant then raped the victim, all the while hitting her about the head with the gun and his fists. He also put the gun to her temple and inside her mouth. He briefly sodomized her and then raped her again. When Charye S. heard some noise in the parking structure, she grabbed appellant's gun hand and began kicking and screaming. Appellant struck her once more with the gun and then fled, leaving Charye S. barely conscious in her car. She was bleeding from her mouth and a laceration on her head.

In his defense at trial, appellant claimed that both victims consented to have sex with him.

DISCUSSION

I

 Appellant contends that the trial court abused its discretion by dismissing a juror during deliberations without a showing of good cause. Pursuant to Penal Code section 1089 and Code of Civil Procedure section 233, ". . . the court, upon 'good cause shown,' may discharge any juror 'found to be unable to perform his duty' at any time during the trial. . . . The determination of 'good cause' rests in the sound discretion of the court

[citations], and the court's finding thereof will be upheld if substantial evidence supports it [citation]." (*People* v. *Johnson* (1993) 6 Cal.4th 1, 21 [23 Cal.Rptr.2d 593, 859 P.2d 673].)

In this case, the record indicates that Juror Bailey failed to perform his duty to deliberate before reaching his decision. The juror did not answer the questions posed to him by other jurors, did not sit at the table with the other jurors during deliberations, acted as if he had already made up his mind before hearing the whole case, and did not look at the two victims in the courtroom. As the court concluded, Juror Bailey "made up his mind before he went in there." The refusal to deliberate amounted to a failure of the juror to perform his duty (see CALJIC No. 17.40) and constituted good cause for removal from the jury. (See *People* v. *Johnson, supra,* 6 Cal.4th at p. 21.)

Juror Bailey also took the notes he had made during the trial home with him in his socks despite the trial court's warning not to do so. ■ "[A] court may exercise its discretion to remove a juror for serious and wilful misconduct, such as . . . repeated violation of the court's instructions, even if this misconduct is 'neutral' as between the parties and does not suggest bias toward either side." (*People* v. *Daniels* (1991) 52 Cal.3d 815, 863-864 [277 Cal.Rptr. 122, 802 P.2d 906].)

■ The other jurors' observations and Juror Bailey's dialogue with the court further indicated that he was not forthcoming with answers to jurors' discussion questions and did not cooperate with the other jurors.[1] To the extent that Juror Bailey could be viewed as merely not paying attention to his fellow jurors and to the court, inattentiveness is also grounds for dismissal of a juror (*People* v. *Johnson, supra,* 6 Cal.4th at pp. 21-22), and Juror Bailey was properly dismissed.

■ Appellant further contends that prejudicial error occurred not only because the trial court removed the only juror who favored acquittal but also because the juror's removal had a coercive effect on the alternate juror. There is nothing in the record to suggest that the alternate juror did not deliberate properly. ■ " 'Alternates are selected from the same source, in the same manner, with the same qualifications and are subject to the same challenges. Alternates have an equal opportunity to observe the entire proceedings and take the same oath as regular jurors.' " (*People* v. *Johnson, supra,* 6 Cal.4th at p. 20.)

■ The trial court told the jury that Juror Bailey "has been excused for legal cause and replaced with an alternate juror. You must not speculate or

---

[1]The foreperson also complained that Juror Bailey had referred to him as "white man" and "made other racial statements," although Juror Bailey explained to the court that his comments had been "misinterpreted."

consider for any purpose the reasons for such excuse." The trial court further instructed the jury to set aside all past deliberations and begin deliberating anew. In the absence of any contrary evidence, we may validly presume that the jurors followed the court's instructions. (See *Parker* v. *Randolph* (1979) 442 U.S. 62, 73 [60 L.Ed.2d 713, 723-724, 99 S.Ct. 2132]; *People* v. *Bonin* (1988) 46 Cal.3d 659, 699 [250 Cal.Rptr. 687, 758 P.2d 1217]; *People* v. *Chavez* (1958) 50 Cal.2d 778, 790 [329 P.2d 907].) Therefore, replacing Juror Bailey with an alternate juror was not prejudicial error.

## II

■ Appellant correctly contends that there was insufficient evidence of a second kidnapping of Jennifer M. Appellant's act of kidnapping Jennifer M. from the Long Beach Mall with the intent of robbing her was a continuous kidnapping offense, even though appellant stopped the car to commit numerous sexual offenses and then drove on to the victim's Redondo Beach apartment. The prosecutor argued to the jury and respondent urges on appeal that the first kidnapping for the purpose of robbery began when appellant abducted Jennifer M. at the mall, indicated he wanted money and took her wallet, money and credit cards. According to respondent, this kidnapping ended when he stopped the car, repeatedly raped the victim and forced her to engage in oral sex. Appellant committed a second kidnapping, respondent contends, when appellant drove Jennifer M. from the location of the sexual offenses to the Redondo Beach apartment, intending to rob her of her ATM card. To the contrary, although appellant's plan for obtaining money from Jennifer M. may have changed in approach during the course of the kidnapping, the initial kidnapping did not end with the commission of the sexual offenses, and there was only one continuous kidnapping.

Our conclusion is supported by other kidnapping cases, which are analogous and instructive. In *People* v. *Masten* (1982) 137 Cal.App.3d 579 [187 Cal.Rptr. 515], the defendant claimed that there were two possible kidnappings and that the court had erred in failing to instruct the jury that it must unanimously agree whether the kidnapping occurred before or after the victim was sexually assaulted. In *Masten*, the defendant and his accomplice abducted the victim in their truck, drove to a remote location, raped the victim, and then refused to release her and drove her a short distance in another direction. The Court of Appeal held that there was only one incident of kidnapping, which began with the abduction and continued as long as the detention continued. "[T]he forcible detention of a victim is an element of kidnaping and as long as the detention continues, the crime continues." (*Id.* at p. 588.)

In *Parnell* v. *Superior Court* (1981) 119 Cal.App.3d 392 [173 Cal.Rptr. 906], the Court of Appeal held that since the forcible detention of the young

kidnap victim was ongoing, the kidnapping was not complete even several years after the victim was enticed into the defendant's car, and the statute of limitations therefore had not run on the kidnapping. (*Id.* at p. 410.) The court in *Parnell* aptly found that kidnapping "is not a crime where in one brief window of time the crime is committed and the perpetrator and victim go their respective ways. Rather, this is a crime of continuing force upon the person . . . ." (*Id.* at p. 408.) "[T]he forcible detention of the victim is an implied element of the crime of kidnaping and, therefore, as long as the detention continues, the crime continues." (*Id.* at pp. 407-408.)

We also reject respondent's ancillary argument that, after appellant completed the sexual offenses, a second kidnapping was initiated when appellant began driving the victim toward her apartment because the additional movement increased the danger to the victim. Certainly evidence showing a substantial increase in the risk of harm to a robbery victim may well determine whether movement of the victim is sufficient to establish the commission of the offense of kidnapping for robbery. (See *People* v. *Daniels* (1988) 202 Cal.App.3d 671, 683-684 [248 Cal.Rptr. 753].) However, no contention is raised here that the movement of Jennifer M. was insubstantial or trivial or that the risk of harm was anything less than substantial. And, respondent can find no support in case authority or in logic for the proposition that any escalation in risk of harm to a victim already in the throes of a kidnapping for robbery delineates the completion of one kidnapping and the commencement of another. Moreover, the threat here that appellant, armed with a semiautomatic firearm, would further injure or even kill Jennifer M. remained fairly constant throughout her ordeal. Once appellant abducted her, she remained vulnerable to his predations and at his mercy.

In the present case, there was a single abduction, followed by a continuous period of detention. Not until she reached her apartment was Jennifer M. released from that detention and the danger it presented. That appellant may have changed his approach or focus as to the robbery, uttered a variety of threats to the victim, and engaged in other crimes after the initial abduction did not transform the offense into two kidnappings. Appellant committed one act of kidnapping for robbery (count 1). Accordingly, his conviction of a second act of kidnapping for robbery (count 8) must be reversed.

### III

■ Appellant contends, and respondent correctly concedes, that sentences were erroneously imposed for both kidnapping for robbery and the underlying robbery, and that the robbery sentence (count 9) must be stayed pursuant to Penal Code section 654. (*People* v. *Beamon* (1973) 8 Cal.3d 625,

639-640 [105 Cal.Rptr. 681, 504 P.2d 905].) We will therfore modify the judgment to stay execution of the sentence on count 9.

## DISPOSITION

The judgment as to count 8 (kidnapping for robbery) is reversed. The judgment is also modified to stay execution of the sentence on count 9 (robbery) pending service of the sentence on count 1 (kidnapping for robbery), with such stay to become permanent upon completion of the sentence on count 1. The trial court is directed to enter a dismissal as to count 8 and to file an amended abstract of judgment. In all other respects, the judgment is affirmed.

Gates, J., and Fukuto, J., concurred.