Filed 9/3/15  P. v. Wright CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

(Yolo)

| | |
|---|---|
| THE PEOPLE, | C076482 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF133618) |
| v. | |
| DANIEL SIDNEY WRIGHT, | ORDER MODIFYING OPINION |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on August 31, 2015, be modified as follows:

On page 1, following the second to the last sentence, the following footnote is added, which will require renumbering of the subsequent footnote:

[1] Appellant's additional contention that his conviction for burglary of an automobile was not supported by sufficient evidence was withdrawn in his reply brief.

1

There is no change in the judgment.


BY THE COURT:


   BLEASE             , Acting P. J.


   MAURO             , J.


   RENNER            , J.

Filed 8/31/15  P. v. Wright CA3 (unmodified version)

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

| | |
|---|---|
| THE PEOPLE, | C076482 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF133618) |
| v. | |
| DANIEL SIDNEY WRIGHT, | |
| Defendant and Appellant. | |

Defendant Daniel Sidney Wright was convicted by a jury of kidnapping, inflicting corporal injury on a cohabitant, issuing criminal threats, false imprisonment by force or violence, dissuasion of a witness by threat of force, stalking, burglary, and child endangerment, all arising from the end of his relationship with his girlfriend, the victim. On appeal he contends (1) his conviction for false imprisonment must be reversed because it is a lesser included offense of kidnapping; (2) his punishment for dissuasion of a witness should be stayed because it was part of an indivisible course of conduct for which he is already being punished; and (3) the victim restitution order must be stricken to the extent it is premised on a crime of which he was not convicted.  We agree with defendant and will modify the judgment accordingly.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Prosecution Evidence*

Defendant and the victim, who dated and lived together for several months, took the victim's three-year-old son to the park on a late afternoon in August 2013. While defendant was playing with the victim's son, the victim noticed that defendant's phone indicated he had received a text message from a woman referencing sexual relations. The victim asked defendant about the message, and he immediately charged at her, yelling and swearing. Defendant pulled her up from where she was sitting, pushed her to the ground, slammed her against a tree, put his hands around her throat, and punched her. A stranger tried to intervene, distracting defendant. The victim took advantage of the distraction to attempt to call 911 on her phone, but defendant grabbed the phone and threw it. She grabbed her son and tried to run away, but she did not have her car keys because she left her purse behind. As she was running away, defendant pulled up next to her in her car, got out of the car, and tried to force her into the car by yelling at her and dragging her by her hair. When he was unable to force her in, he pushed her aside, grabbed her son, and put the child in the back seat. Defendant got into the driver's seat, and out of fear for her son, the victim got into the car as well.

Once in the car, defendant continued to hit the victim. As they drove, the victim's son fell out of his seat. At the victim's request, defendant stopped the car, but when the victim attempted to enter the back seat to help her son, defendant drove off without her. The victim ran after the car, and defendant allowed her to reenter. At one point, defendant stopped at a fast food restaurant, took the child into the restaurant to eat, left the victim in the car, and told her to wait there. She was afraid to leave her son with defendant. When defendant and the child sat down to eat their food, the victim ran into the restaurant to collect her child and to attempt to flee. Angry, defendant poured a cup of liquid on her. She took her child and hid in the restaurant bathroom. Defendant followed her into the bathroom, where he repeatedly hit her head against a metal paper

2

towel dispenser. Defendant then took her son and they all went back to the car. Once they got in the car, defendant decided to get gas. He stayed in the car with her son, and forced the victim to pay for and pump the gas. The victim contemplated telling the cashier what was happening but was afraid what defendant might do to her son if he found out. Finally, they drove to the apartment they shared. While driving, defendant continued to threaten to hit her and to "break" her face.

Defendant entered the apartment first, bringing her son with him. The victim followed them inside, where she asked him to let them go. Defendant became angry, and forced the victim and her son to sit down on the couch. Each time her son would get up and ask to go to his grandmother's house, defendant would grab him and place him back on the couch. Defendant would not even let her son use the bathroom, so he wet himself on the couch. After that, defendant let the victim go upstairs for a change of clothes. Defendant then tried to put her son in a room by himself, but the child escaped. They all went back downstairs, where defendant continued hitting the victim. The victim told defendant he should leave; he hurled a mug full of liquid at her. She ran out the front door of the apartment, leaving her son behind, because she was afraid this was her last chance, she could not take any more abuse, and she believed defendant would follow her. He did. He also tried unsuccessfully to bring her back inside by pulling her hair. She was able to find a neighbor, who called the police. In the meantime, her son had come outside as well. Police arrived shortly thereafter and forced defendant to leave, but they did not arrest him.

That night, the victim and her sister received numerous calls from a blocked telephone number (the victim had recovered and repaired the cell phone defendant had thrown earlier). Defendant was the caller. He called the victim a snitch and threatened to harm her. The victim went to stay at her mother's house. She later learned that defendant had been seen getting into or out of her car. The victim found a note defendant had left on the passenger seat of the car, though she had locked the car the night before.

3

The note indicated the victim had "snitch[ed]" on him and accused her of violating his privacy by looking at his phone.

At that point, the victim called the police and told them what had happened the previous day. The police helped her obtain a restraining order. She continued to receive calls from defendant. She answered once; he apologized; she told him to stay away from her; he indicated he would kill himself rather than go to jail; she told him to leave her alone; he grew angry, cussed at her, and said he should have killed himself, her, and her son when he had the chance; she hung up the phone.

The next day, she heard he had gone to her apartment. When she went to her apartment, the door was open, so she called the police, after they checked that no one was there, she noted that several items were missing and broken. When she went to her office later that week, she found out defendant had entered her office using a pass code known only to employees. Defendant called her from county jail and apologized.

### B.    Defense Evidence

Defendant testified that they had gone to the park so the victim's son could "burn some energy." He and the victim were sitting on a blanket together, when his phone vibrated. He looked over at it, and saw the victim "going through it." She "went berserk," accused him of cheating on her, refused to give him back his phone. As he was gently trying to retrieve his phone, he heard someone yelling, "don't hit that woman." He looked in the direction of the sound, saw someone videotaping them and approached the person who yelled, but ultimately turned around and walked back towards the victim. He did not see the victim, so he walked to where her car was parked, saw her nearby, told her they should break up, and then they all (defendant, the victim, and her son) got in her car.

The victim first suggested that they return to their apartment, but they instead decided to get her son something to eat. The victim drove to one restaurant, where she had an emotional breakdown while still in the car. Her son continued to complain he was hungry, and when defendant urged her to take care of her son, she became upset and told

4

defendant he would "pay for this." Eventually they went to another restaurant, where defendant went inside with the victim's son to get food for the child. At first, the victim did not want to come inside because she had been crying and her make-up had run, but ultimately she came inside, carrying an open water bottle. She poured the water all over the food, her son began crying, and she took her son into the bathroom. Defendant waited for them outside the bathroom.

They all got back in the car, drove to get gas, and then they returned to the apartment so defendant could collect his things. Defendant put a movie on the television for the victim's son, and, about an hour later, while defendant was waiting for his friend to come pick him up from the apartment, the victim came back downstairs and stated she was leaving because defendant was still there. When she walked outside, her son started screaming, and defendant told her to take her son. The victim demanded that defendant leave, and, at that time, the police arrived.

He called the victim once later that evening, in which he spoke to the victim and her brother; he did not threaten either of them. He also denied putting the note in her car or breaking into her apartment. He admitted entering her workplace using the pass code she had given him earlier, though he contended it was to collect a folder of his.

### C.    *Judgment and Sentencing*

A jury found defendant not guilty of injuring a wireless communication device (Pen. Code, § 591.5; count 13)[1]; it deadlocked on the kidnapping of the victim's son (§§ 207, subd. (a), 208, subd. (b); count 3) and on residential burglary (§ 459; count 10); it found defendant guilty of inflicting corporal injury on a cohabitant (§ 273.5, subd. (a); counts 1 [at the park] & 4 [in the car]), kidnapping of the victim (§ 207, subd. (a); count 2), issuing criminal threats (§ 422; count 5), false imprisonment with force and violence

---

[1] Undesignated statutory references are to the Penal Code.

(§§ 236, 237, subd. (a); count 6), dissuading a witness by threat of force (§ 136.1, subd. (c)(1); count 7), stalking (§ 646.9, subd. (a); count 8), burglary (§ 459; counts 9 [car] & 11 [workplace]), and misdemeanor child endangerment (§ 273a, subd. (b); count 12). The trial court declared a mistrial as to counts 3 and 10, and dismissed those charges. The trial court also found true the allegations that defendant had a prior serious and/or violent felony conviction subjecting him to sentencing enhancements pursuant to section 667, subdivisions (a)(1), (c), and (e)(1).

The trial court sentenced defendant to an aggregate term of 25 years 8 months in state prison: 10 years (double the middle term) for kidnapping the victim (count 2), a consecutive two years (double one-third of the middle term) for infliction of a corporal injury (count 1), a consecutive six years (double the middle term) for dissuading a witness (count 7), two consecutive 16-month terms (double one-third of the middle term) for each second degree burglary (counts 9 & 11), a concurrent one year for the child endangerment (count 12), and five years for the prior serious felony conviction. The trial court imposed sentences but stayed execution for the corporal injury that occurred in the car (count 4), criminal threats (count 5), false imprisonment (count 6), and stalking (count 8). Additionally, the trial court ordered defendant to pay restitution to the victim in the amount of $1,200 and to the victim's compensation fund in the amount of $2,853. The trial court also imposed statutory fines and fees and a 10-year criminal protective order.

## DISCUSSION

## I

### False Imprisonment

At trial the People argued there were two separate detentions resulting in two distinct crimes: kidnapping based on defendant forcing the victim to get into the car by using her son and false imprisonment based on defendant forcing the victim to remain in the living room of the apartment through intimidation. On appeal, defendant contends there was a single ongoing detention from the moment defendant forced the victim into

6

the car until she later fled the apartment seeking help. The People argue defendant could properly be convicted of both crimes because a reasonable jury could conclude the kidnapping detention ended when the victim got home, before the false imprisonment began. We conclude the false imprisonment conviction must be reversed because it is a lesser included offense of kidnapping, and defendant cannot be convicted of both crimes where, as here, the crimes are based on the same course of conduct.

Section 207, subdivision (a) defines kidnapping as "forcibly, or by any other means of instilling fear, steal[ing] or tak[ing], or hold[ing], detain[ing], or arrest[ing] any person in this state, and carr[ying] the person into another country, state, or county, or into another part of the same county. . . ." " '[T]he forcible detention of a victim is an element of kidnapping and as long as the detention continues, the crime continues.' " (*People v. Thomas* (1994) 26 Cal.App.4th 1328, 1334.) False imprisonment is "the unlawful violation of the personal liberty of another." (§ 236.) It is also a lesser included offense of kidnapping. (*People v. Delacerda* (2015) 236 Cal.App.4th 282, 289.) As such, a defendant cannot be convicted of both based on the same act or course of conduct. (*People v. Sanders* (2012) 55 Cal.4th 731, 736; *People v. Chacon* (1995) 37 Cal.App.4th 52, 65; *People v. Magana* (1991) 230 Cal.App.3d 1117, 1120-1121.)

Here, the People argue that because the victim followed defendant into the apartment, she entered freely, voluntarily, and by her consent the kidnapping had ended at that point so the false imprisonment is based on separate acts. The People's attempt to narrowly parse the ongoing course of conduct that comprised the kidnapping into two separate detentions is not well taken. "[T]he crime of kidnapping continues until such time as the kidnapper releases or otherwise disposes of the victim and has reached a place of temporary safety . . . ." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1159.) Here, just as the victim's decision to initially enter the car at the park was not freely or voluntarily made because defendant had her son, her decision to follow defendant into the apartment after defendant "grabbed" her son and took him inside is not consensual either. Thus, the

kidnapping was still ongoing when the victim entered the apartment and was falsely imprisoned by defendant. Therefore, both crimes are based on the same conduct, and the conviction for the lesser included offense of false imprisonment must be reversed.

## II

### Dissuasion of a Witness

The trial court initially indicated an intention to stay execution of any sentence for defendant's witness dissuasion conviction (count 7) based on the application of section 654. However, based on the People's representation that section 1170.15 precluded the application of section 654 and required imposition of a consecutive full term, the trial court imposed a six-year consecutive sentence for witness dissuasion. Defendant contends that because the trial court found the dissuasion of the witness and the kidnapping arose from the same course of conduct motivated by the same intent, punishment for dissuasion should be stayed pursuant to section 654. We agree.

Section 1170.15 declares, "Notwithstanding subdivision (a) of Section 1170.1 which provides for the imposition of a subordinate term for a consecutive offense of one-third of the middle term of imprisonment, if a person is convicted of a felony, and of an additional felony that is a violation of Section 136.1 . . . that was committed against the victim . . . , the subordinate term for each consecutive offense that is a felony described in this section shall consist of the full middle term of imprisonment for the felony for which a consecutive term of imprisonment is imposed . . . ." Thus, this statute authorizes a court to impose a full consecutive middle term when imposing a subordinate sentence for dissuading a witness.

However, section 654, subdivision (a) applies regardless of whether a court imposes a concurrent or a consecutive sentence for a separate offense arising from an indivisible course of conduct. (*People v. Deloza* (1998) 18 Cal.4th 585, 594 ["Section 654 does not allow any multiple punishment, whether concurrent or consecutive"].) "[A] statute may prevent or negate the operation of section 654 even in

8

the absence of an express reference to that provision," but the statutes that have done so have involved use of the phrase "notwithstanding any other law" or similar language. (*People v. Duff* (2010) 50 Cal.4th 787, 798; see *People v. Palacios* (2007) 41 Cal.4th 720, 730; *People v. Benson* (1998) 18 Cal.4th 24, 32.) As opposed to those statutes, the "[n]otwithstanding" language of section 1170.15 is limited to negating the one-third the middle term provision of section 1170.1, subdivision (a). It is not so broad as to preclude the application of section 654, subdivision (a). Thus, we conclude section 654, subdivision (a) applies to defendant's conviction for witness dissuasion and the trial court erred in failing to stay the sentence on this count.

And, since it is clear the trial court would have stayed sentencing for dissuasion of a witness were it not for the argument of the People, there is no need to remand this matter for resentencing. (See *People v. Coelho* (2001) 89 Cal.App.4th 861, 889.) Rather, we modify the judgment to stay the sentence imposed by the trial court for count 7.

## III

### Restitution

Defendant contends that because he was not convicted of residential burglary, the victim's restitution award of $1,200 stemming from the burglary of her residence should be stricken. The People properly concede the error. A victim is entitled to recover restitution to recompense economic losses caused by the commission of a crime from a person convicted of that crime. (*People v. Woods* (2008) 161 Cal.App.4th 1045, 1049.) But, here defendant was not convicted of residential burglary; the jury deadlocked on that count and it was ultimately dismissed. Therefore, the restitution award premised on losses the victim suffered in the burglary of her residence must be stricken. (*Id.* at pp. 1049-1054; *People v. Lai* (2006) 138 Cal.App.4th 1227, 1251.)

## IV

## Abstract of Judgment

The People note that the abstract of judgment contains an error requiring correction. The abstract of judgment indicates the trial court imposed and stayed a term of five years pursuant to section 667, subdivision (a)(1). However, the trial court did not indicate this punishment was to be stayed in its oral pronouncement of judgment at the sentencing hearing. Therefore, we will order the trial court to correct the abstract of judgment to eliminate the reference to this punishment being stayed. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 187-188.)

## DISPOSITION

The judgment is modified to reverse defendant's conviction for false imprisonment (count 6), to stay sentencing for dissuasion of a witness (count 7) pursuant to section 654, and to strike the $1,200 victim restitution award. As modified, the judgment is affirmed. The trial court is directed to prepare an amended and corrected abstract of judgment consistent with this opinion, and to forward a certified copy of the abstract to the Department of Corrections and Rehabilitation.


    BLEASE        , Acting P. J.


We concur:


    MAURO       , J.


    RENNER      , J.

10