Filed 9/20/16  P. v. Velasquez CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DAVID A. VELASQUEZ,<br><br>        Defendant and Appellant. | A142077<br><br>(San Mateo County<br>Super. Ct. No. SC75637) |

A jury found appellant David A. Velasquez guilty of kidnapping with intent to rape (aggravated kidnapping), assault with intent to rape, false imprisonment with force or violence, and making criminal threats, based on an incident in which he attacked his teacher, Ms. Renee Doe, in a school parking garage.

Appellant appeals the aggravated kidnapping conviction, arguing that (1) there was insufficient evidence to support the asportation element of the offense, (2) the trial court failed to instruct the jury sua sponte on false imprisonment as a lesser included offense, and (3) the trial court failed to clarify for the jury, sua sponte, the difference between asportation for purposes of aggravated kidnapping ( Pen. Code,[1] § 209) and asportation for purposes of the lesser included offense of simple kidnapping (§ 207).  He also contends, in the alternative, that the false imprisonment conviction must be stricken as redundant to the aggravated kidnapping conviction.

---

[1] All further unspecified statutory references are to the Penal Code.

We reverse the false imprisonment conviction but otherwise affirm.

## I.     BACKGROUND

In January 2012**,** Ms. Doe was a special education teacher at a charter high school in San Mateo County.  Appellant had been one of her students for several years.  One afternoon following class, Ms. Doe stayed late to finish some work and was in her office at around 5:15 p.m.  Appellant appeared unexpectedly, which was very unusual because the school closes at around 5:00 p.m.  Ms. Doe asked him why he was in the building, and appellant replied that he was there to give a ride to another student, but when asked who that student was, he did not know the name.  This explanation did not make sense to Ms. Doe, but she did not press him on it.

Around 5:45 p.m., Ms. Doe left for the day and headed down to the building's garage where her car was parked.  As she walked into the garage and turned the corner, a man jumped from behind some trash cans near the garage entrance and grabbed her from behind "like a big bear hug."  She at first thought it might be a prank, but when she felt a knife being held at her waist and the man told her to "shut up" and "go to [your] car," she realized he was not joking.  The man asked her, "Where is your car?"  She asked him, "Where are we going?"  He did not answer, and just repeated "Get in your fucking car."

Ms. Doe was certain from the beginning of the assault that the attacker was appellant, and she later identified him at trial.  Although appellant was wearing sunglasses, a dark hoodie, and a scarf over his face, he had a lisp and a distinctive voice that she recognized.  Ms. Doe was determined not to get into her car with appellant "at all costs" because "nothing good could come [of it]."  Appellant pushed her towards her car while still holding her from behind, repeating at least twice "I'll fucking kill you if you don't open the car." Ms. Doe feared for her life and thought that if she did get into her car, appellant would kill her.

Ms. Doe's car was in the top right corner of the garage, the farthest point from the exits to the street and the school and approximately 80 feet from the point at which the assault began.  As the two came nearer to the car, with appellant continuing to force Ms. Doe along at knife-point, he told her to get out her keys and unlock the door.  At that

2

point, Ms. Doe pretended to drop her keys as a stalling tactic. She knew there was at least one other teacher still in the building who might come into the garage at that hour, and she hoped to prolong the process of getting into the car long enough so that her colleague might discover what was happening. As Ms. Doe stooped to retrieve her keys, appellant put his hand firmly on her buttocks and in her crotch near her vaginal area.

When Ms. Doe stood up, appellant became even more threatening, putting his knife to her throat. The grasping at her made Ms. Doe feel "more scared, more threatened," and Ms. Doe was by that point convinced appellant intended to rape her. Out of desperation, she tried to talk her way out of the situation, addressing appellant as "Davy" and telling him "[Y]ou don't have to do this. Think about what you are doing. You could walk away now and everything will be okay." In response, appellant said "I'm not fucking Davy. I don't know who Davy is, and shut the fuck up."

Having failed to convince appellant to walk away, Ms. Doe tried to free herself from his grasp and run away. She twisted out of her overcoat and purposefully dropped her bag. Appellant, however, caught her arms and once again held the knife to her neck. In response to the escape attempt, he said "Don't you think I'll kill you? Don't you think I'll hurt you?" Appellant pushed Ms. Doe against the driver's side door. Ms. Doe continued to try to wriggle free, and appellant hit her with "a closed fist to the head," continuing to repeat "Get in the fucking car. I'll fucking kill you."

Ms. Doe fell to the ground at that point, onto her hands and knees. Appellant forcefully pushed her over into a position where she was face up, with her back and shoulders against the ground. Ms. Doe tried to curl up, bringing her knees up to her chest in a fetal position. She continued to struggle with her arms, but felt resigned that appellant was going to rape her. He spread her knees apart, pinned her arms down, and lay down on top of her with his crotch between her legs. He said "I guess we'll have to do it this way."

At that moment, Ms. Doe's co-worker, Ms. Speckels, arrived in the garage, and saw two figures on the ground, one laying on top of the other. She yelled at them, at first thinking they were students having intercourse in the garage. Appellant got up and left

3

the garage, but only after telling Ms. Doe, "You're one lucky bitch." Ms. Speckels caught sight of him while he was leaving, and recognized him as appellant. Then she noticed that the other person on the ground was not a student, but her colleague, Ms. Doe, who was in shock, shaking and visibly terrified. The two women got into Ms. Doe's car, locked the door, and called 911. When the police arrived, Ms. Doe identified her attacker as appellant.

Appellant was arrested a short time later at his home. A search yielded various items of physical evidence that were consistent with Ms. Doe's description of what happened, including photos of Ms. Doe suggesting appellant had a sexual obsession with her. In trial testimony, appellant admitted to being in the school garage, disguising himself in the garb Ms. Doe described, interacting with Ms. Doe there, and wielding a knife, but claimed she misinterpreted his conduct. He testified that he surprised Ms. Doe in the garage as a joke. She was scared, so he "guid[ed] her to her car."

At one point, appellant testified, he "accidentally" brushed against Ms. Doe's buttocks when she stooped over to get her keys. He did tell her to get in her car, and the two did fall to the ground at one point, but all he wanted to do in trying to put her into her car was to see her off for the day. He denied attacking Ms. Doe. He also denied being sexually attracted to Ms. Doe , and said that he had only told detectives he tried to kiss her next to her car because the police pressured and harassed him during questioning. He claimed he ran out of the garage when Ms. Speckels arrived only because Ms. Doe told him to run.

Appellant was charged with kidnapping with intent to commit rape (§ 209, subd. (b)(1)) (count 1), assault with intent to commit rape (§ 220, subd. (a)) (count 2), false imprisonment with force or violence (§§ 236, 237) (count 3), and criminal threats (§ 422) (count 4). Each of these counts included a weapon enhancement allegation that appellant used a knife during the commission of the charged offense. (§ 12022, subd. (b)(1).) At trial, after deliberating an hour and a half, the jury returned verdicts of guilty on all counts and found true each of the enhancement allegations.

4

Based on the aggravated kidnapping conviction and the finding of use of a knife in the commission of the offense, appellant was sentenced to an indeterminate prison term of eight years to life. Sentences on the remaining counts were imposed, but stayed. This timely appeal followed.

## II.   DISCUSSION

### A.   Sufficiency of the Evidence To Support The Conviction of Aggravated Kidnapping

Appellant first argues there was insufficient evidence to support the asportation element of the aggravated kidnapping charge. " 'On appeal, an appellate court deciding whether sufficient evidence supports a verdict must determine whether the record contains substantial evidence—which [means] . . . evidence that is reasonable, credible, and of solid value—from which a reasonable jury could find the accused guilty beyond a reasonable doubt.' [Citations.] We presume in support of the judgment 'the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Vines* (2011) 51 Cal.4th 830, 869 (*Vines*)).

Aggravated kidnapping under section 209, subdivision (b)(1), as with simple kidnapping under section 207, requires substantial movement in order to satisfy the asportation element of kidnapping, but in evaluating whether a given movement is substantial, the trier of fact may consider more than the actual distance. (*People v. Martinez* (1999) 20 Cal.4th 225, 232–237 (*Martinez*); see also *People v. Magana* (1991) 230 Cal.App.3d 1117, 1120–1121.) The simple kidnapping statute, section 207, does not speak of movement over any specified distance, and limiting a jury's consideration to a particular distance is "rigid and arbitrary, and ultimately unworkable." (*Martinez, supra,* at p. 236.) Thus, the required distance cannot be specified in a fixed number of feet or inches. (*People v. Rayford* (1994) 9 Cal.4th 1 (*Rayford*).) To determine whether the movement involved is substantial, the jury may consider the "totality of the circumstances" (*Martinez, supra,* at p. 237) surrounding the " 'scope and nature' " of the movement (*id.* at p. 236), including the increased risk of harm to the victim, the

5

decreased likelihood of detection, the increased danger in the victim's foreseeable attempts to escape, and the perpetrator's opportunity to commit additional crimes. (*Id.* at p. 237; accord, *Vines*, *supra*, 51 Cal.4th at pp. 869–870; see also *People v. Dominguez* (2006) 39 Cal.4th 1141, 1152 (*Dominguez*) ["This standard suggests a multifaceted, qualitative evaluation rather than a simple quantitative assessment."].)

For simple kidnapping under section 207, distance is a factor for the jury to consider along with other contextual circumstances, but a finding of substantiality need not be based on any particular factor (*Martinez*, *supra*, 20 Cal.4th at p. 233), and there is no minimum distance. Applying the open-ended contextual test of substantiality that has developed in the case law, courts have often found relatively short distances to be substantial. (See, e.g., *People v. Bradley* (1993) 15 Cal.App.4th 1144, 1154, disapproved on other grounds in *Rayford, supra,* 9 Cal.4th at p. 21 [movement of 50 to 60 feet from open street to inside closed dumpster area was substantial movement]; *People v. Shadden* (2001) 93 Cal.App.4th 164, 169 (*Shadden*) [movement of nine feet where it changed the victim's environment]; *People v. Smith* (1995) 33 Cal.App.4th 1586, 1594 [movement of 40 feet where victim moved from public to private area].) For aggravated kidnapping under section 209, subdivision (b)(1), asportation rests on the same foundation—with the substantiality of the movement involved governed by the same totality of the circumstances approach—but there is a key difference: the jury *must* also find that the movement (1) went beyond something merely "incidental" to the target crime and (2) "increase[d] the risk of harm to the victim over and above that necessarily present in the underlying crime itself."[2] (*Martinez*, *supra*, 20 Cal.4th at p. 232; accord *Vines*,

---

[2] This has been referred to as the "two-part *Daniels* . . . test" (*Rayford*, *supra*, 9 Cal.4th at p. 21), since it derives originally from *People v. Daniels* (1969) 71 Cal.2d 1119 (*Daniels*). The *Daniels* test was codified in amendments to section 209 enacted by the Legislature in 1997. (See *People v. James* (2007) 148 Cal.App.4th 446, 454 & fn. 5 (*James*).) As originally enunciated by our Supreme Court, the second prong of the *Daniels* test required the increase in risk to the victim must be substantial. (*Daniels*, *supra*, at p. 1140.) The 1997 amendments to section 209 eliminated the requirement of a

*supra*, 51 Cal.4th at p. 871 [same]; § 209, subd. (b)(2).) " 'Incidental' means 'that the asportation play[ed] no significant or substantial part in the planned [offense], or that it [was] . . . more or less [a] " 'trivial change[ ] of location having no bearing on the evil at hand.' " ' " (*James*, *supra*, 148 Cal.App.4th at p. 454.) These two factors are "not mutually exclusive, but interrelated" (*Rayford, supra*, 9 Cal 4th at p. 12), and of the two it is often said that the "essence of aggravated kidnapping is the increase in the risk of harm to the victim caused by the forced movement." (*Dominguez*, *supra*, 39 Cal.4th at p. 1152.)

Whether the scope and nature of the movement here took it beyond something that was merely incidental to rape and increased the risk to Ms. Doe beyond that inherent in rape was a jury question to be decided under the totality of circumstances. The evidence showed that appellant forcibly marched Ms. Doe some 80 feet. The new location to which she was moved, next to her car, made it difficult for her to reach the garage exits and more likely that appellant could avoid possible detection. That satisfies the first prong of *Daniels*. (See *Shadden*, *supra*, 93 Cal.App.4th at p. 170 [by moving victim "to the back room . . . out of public view," defendant "made it less likely for others to discover the crime and decreased the odds of detection"]; *People v. Aguilar* (2004) 120 Cal.App.4th 1044, 1049 ["Courts have held that moving a victim to a more isolated open area which is less visible to public view is sufficient."].) And the manner in which appellant forced Ms. Doe to move to the new location, at the point of a knife, increased the risk that she would be wounded or killed beyond that inherent in rape alone, thus satisfying the second prong of the *Daniels* test. (See *Vines*, *supra*, 51 Cal.4th at pp. 870–871 [ "[While] defendant's forcible movement of the victims was limited to movement *inside* the premises of the Watt Avenue McDonald's [citation] . . . , the movement . . . took Zaharko—and ultimately the other victims—from the front of the store, down a

"substantial" increase in risk. (*Id*. at p. 454, fn. 5; see *Martinez*, *supra*, 20 Cal.4th at p. 232, fn. 4.)

hidden stairway, and into a locked freezer. Under these circumstances, we cannot say the 'scope and nature' of this movement was 'merely incidental' to the commission of the robbery."] (Original italics.).)

Relying on *People v. Washington* (2005) 127 Cal.App.4th 290 (*Washington*), appellant argues that since he moved Ms. Doe within the confines of the parking garage, the asportation required for aggravated kidnapping was insufficient.[3] In *Washington*, the defendants, in the course of robbing a bank, took the branch manager and a teller from their work stations, a distance of approximately 25 feet and 45 feet, respectively, to the vault to open it for the robbers. (*Id*. at pp. 296, 299.) After the vault was opened, the robbers had the teller lie on the ground as the manager removed the money and gave it to them. The robbers placed the money in a bag and then left. (*Id*. at p. 296.) The court of appeal found those movements to be insufficient to support a conviction of kidnapping for robbery because they were incidental to the commission of the robbery. The movements occurred entirely within the bank, each victim was moved the shortest distance possible to the vault, and the victims' movement was necessary to open the vault

---

[3] The foundation of this line of argument is *Daniels*, where our Supreme Court observed that "when, in the course of a robbery a defendant does no more than move his victim around inside the premises in which he finds him—whether it be a residence, as here, or a place of business or other enclosure—his conduct generally will not be deemed to constitute the offense proscribed by section 209." (*Daniels*, *supra*, 71 Cal.2d at p. 1140.) From *Daniels*, *Washington* and other kidnap-robbery cases appellant discerns what he suggests is, in effect, a "rebuttable presumption" that movement within a single structure is insufficient for purposes of section 209, whether the target crime is robbery or rape. We disagree that there is any such "single structure" rule. (See *James*, *supra*, 148 Cal.App.4th 446, 456 ["There is no rigid "indoor-outdoor" rule by which moving a victim inside the premises in which he is found is *never* sufficient asportation for kidnapping for robbery while moving a victim from inside to outside (or the reverse) is *always* sufficient."] (Original italics.).) That reading of the law runs contrary to the contextual, totality of the circumstances approach governing asportation that has been applied consistently by our Supreme Court in recent years. (See *Vines*, *supra*, 51 Cal.4th at pp. 869–870; *Martinez, supra*, 20 Cal.4th at p. 233; *Dominguez, supra*, 39 Cal.4th at p. 1151.)

8

and complete the robbery. (*Id.* at p. 300.) On the evidence adduced in this case, unlike *Washington*—where "there was no excess or gratuitous movement of the victims over and above that necessary to obtain the money in the vault" (*id.* at p. 299)—the jury could reasonably have concluded that appellant moved Ms. Doe towards her car because he thought that was a better place to avoid detection and prevent escape.[4]

This case is more akin to *People v. Jones* (1999) 75 Cal.App.4th 616 (*Jones*) than to *Washington*. In *Jones*, the female victim, who had just stepped out of her car in a school parking lot to meet her boyfriend for lunch, was seized by the defendant and forcibly moved about 40 feet back to her car, where he made her open the door and get back in. As the defendant entered the car to rob her, the victim escaped through the other side door. (*Id.* at p. 622.). The appellate court upheld a conviction for kidnapping to commit robbery, explaining "Appellant's forcing Watkins to move 40 feet within the parking lot from her boyfriend's truck to her car—by no means an insubstantial distance—if considered alone did not substantially increase the harm to her. The critical factor which substantially increased the risk of harm to Watkins occurred when he forced her to move the 40 feet in order to then push her into her car. Although the car alarm was sounding, once he pushed her into the car, she was no longer in public view as when she was in plain sight with appellant holding his hand over her mouth—a situation which would have aroused concern in any onlookers." (*Id.* at pp. 629–630.).

---

[4] In addition to *Washington*, appellant relies on *People v. Daly* (1992) 8 Cal.App.4th 47 (*Daly*), and *People v. Sheldon* (1989) 48 Cal.3d 935 (*Sheldon*). But those cases involved simple kidnapping, not aggravated kidnapping, and focused on whether the distance at issue was substantial enough. (See *Daly*, *supra*, 8 Cal.App.4th at p. 56 ["Daly was convicted of simple kidnapping, a violation of Penal Code section 207, subdivision (a)."]; *Sheldon*, *supra*, 48 Cal.3d at p. 952–953 [in capital case simple kidnapping conviction in Nevada that involved asportation "too minor to constitute kidnapping" under California law deemed improper to submit to the jury as a penalty phase aggravating circumstance under section 190.3, subdivision (b)].) The *Daniels* test was not implicated in either case.

9

A " 'rape . . . does not necessarily require movement to complete the crime.' " (*Shadden*, *supra*, 93 Cal.App.4th at p. 169, quoting *People v. Salazar* (1995) 33 Cal.App.4th 341, 348, fn. 8.) Where "a defendant drags a victim to another place, and then attempts a rape, the jury may reasonably infer that the movement was neither part of nor necessary to the rape." (*Shadden*, *supra*, 93 Cal.App.4th at p. 169). Here, there was more than just a gratuitous movement, unnecessary to the target crime of rape. Appellant forcibly moved Ms. Doe twice the distance at issue in *Jones*, pushing her along at knife-point, and in the ensuing struggle, she tried to escape, escalating the danger to her safety as appellant tried to corral her, more than once pointing his knife at her throat. That aspect of what happened in this case is "the essence of aggravated kidnapping." (*Dominguez*, *supra*, 39 Cal.4th 1141, 1152; see *In re Earley* (1975) 14 Cal.3d 122, 131–132 ["The 'risk of harm' test is satisfied when the victim is forced to travel a substantial distance under the threat of imminent injury by a deadly weapon. . . . [¶] 'Clearly any substantial asportation which involves forcible control of the robbery victim such as that occurring in this case exposes her to grave risks of harm to which she would not have been subject had the robbery occurred at the point of initial contact.' "].) The increased peril was equal to if not greater than that faced by the victim in *Jones* when she was pushed into a car. Ms. Doe managed to survive the attack, but the "fact that [the] dangers [associated with the asportation] do not in fact materialize does not, of course, mean that the risk of harm was not increased." (*Rayford, supra,* 9 Cal.4th at p. 14; accord *Vines*, *supra*, 51 Cal.4th at p. 870.)

We find sufficient evidence to support the aggravated kidnapping conviction.

## B.     Failure to Instruct Sua Sponte on Lesser Included Offense of False Imprisonment with Force or Violence

Appellant next contends his conviction for aggravated kidnapping must be reversed because, although the trial court instructed the jury on the offense of false imprisonment with force or violence (§§ 236, 237, subd. (a)), it erred in failing to instruct

10

the jury sua sponte on this crime as a lesser included offense. " ' "We apply the independent or de novo standard of review to the failure by the trial court to instruct on an assertedly lesser included offense." ' " (*People v. Campbell* (2015) 233 Cal.App.4th 148, 158.) A lesser offense is necessarily included in the charged offense only if it meets either the "elements test" or the "accusatory pleading test." (*People v. Lopez* (1998) 19 Cal.4th 282, 288.) The "elements test" is satisfied when " ' "all the legal ingredients of the corpus delicti of the lesser offense [are] included in the elements of the greater offense." ' " (*Ibid.*) The "accusatory pleading test" is satisfied " ' "if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed." [Citation.]' " (*Id.* at pp. 288–289.)

"Generally, to prove the crime of kidnapping, the prosecution must prove three elements: (1) a person is unlawfully moved by use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a substantial distance." (*People v. Jones* (2003) 108 Cal.App.4th 455, 462.) To establish the crime of false imprisonment by force or violence, the prosecution must prove the defendant intentionally and unlawfully restrained, or confined, or detained someone by violence or menace and made the other person stay or go somewhere against that person's will. (CALCRIM No. 1240.) " 'Violence . . . [is] the exercise of physical force used to restrain over and above the force reasonably necessary to effect such restraint (*People v. Babich* (1993) 14 Cal.App.4th 801, 806, italics omitted), and "menace" is a threat of harm express or implied by word or act (*People v. Matian* (1995) 35 Cal.App.4th 480, 484). Because all of the elements of false imprisonment by force or violence are included in the elements of kidnapping, the crime of kidnapping necessarily includes the crime of false imprisonment effected by violence. (*Shadden*, *supra*, 93 Cal.App.4th at p. 171; *People v. Cooks* (1983) 141 Cal.App.3d 224, 333.)

" ' "[A] trial court must instruct on lesser included offenses, even in the absence of a request, whenever there is substantial evidence raising a question as to whether all of the elements of the charged offense are present." ' [Citation.] Conversely, even on

11

request, the court 'has no duty to instruct on any lesser offense unless there is substantial evidence to support such instruction.' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1215; see also *People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*).) Substantial evidence exists where there is evidence from which a jury composed of reasonable persons could conclude that the appellant was guilty of the lesser crime. (*People v. Breverman, supra*, at p. 162.) It is evidence that "must reach a level sufficient to ' "deserve consideration by the jury, i.e., 'evidence from which a jury composed of reasonable [people] could have concluded' " ' that the particular facts underlying the instruction did exist. [Citations.] Thus, a trial court need not instruct *sua sponte* [on lesser] offenses unless the evidence would justify a conviction of such offenses." (*People v. Turner* (1983) 145 Cal.App.3d 658, 679, disapproved on other grounds in *People v. Majors* (1998) 18 Cal.4th 385, 411.) On the record presented here, there was substantial evidence to support a finding that appellant was only guilty of false imprisonment, mandating that the jury be instructed on this lesser offense. (*Breverman, supra,* 19 Cal.4th at pp. 148, 154–155; see *People v. Webster* (1991) 54 Cal.3d 411, 443.)

Although it was error for the court not to instruct on false imprisonment as a lesser included offense to aggravated kidnapping, we find the error to be harmless. The court gave instructions on attempted aggravated kidnapping as a lesser included offense. And despite having this option, the jury declined to take it. Since attempted aggravated kidnapping, like false imprisonment, does not require asportation (*People v. Cole* (1985) 165 Cal.App.3d 41, 50), the jury's choice of aggravated kidnapping over attempted aggravated kidnapping shows that, when given the option of convicting appellant of a lesser included charge that did not require asportation, the jury decided upon the more serious offense. We see no reason why its decision to pass on a lesser included crime would have been any different if false imprisonment had been available as an alternative in addition to attempted aggravated kidnapping. Thus, we find no reasonable probability that the jury would have reached a result more favorable to appellant had it been properly

instructed. (*Breverman, supra,* 19 Cal.4th at p. 178; *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)[5]

In a variation on this argument, appellant argues in the alternative that we must reverse his independent conviction under section 237 for false imprisonment. If false imprisonment is found to be a lesser included offense of aggravated kidnapping, he contends, that offense is necessarily subsumed within the greater section 209, subdivision (b)(1) offense, requiring reversal of the count 3 conviction for violation of section 237. The Attorney General concedes the point. We agree with her concession, and accordingly will reverse the conviction on count 3.

## C. Failure to Clarify the Difference Between the Asportation Element of Aggravated Kidnapping and the Asportation Element of Simple Kidnapping

Finally, appellant argues that, given the nature of the defense he pursued in this case, and the evidence presented, the court's instruction on the asportation element of aggravated kidnapping when compared to its instruction on the asportation element of simple kidnapping left the jury incapable of understanding crucial distinctions between these two crimes. To avoid forcing the jury into arbitrary decisionmaking, he argues, the court was duty-bound to provide a sua sponte clarifying explanation on asportation. Appellant emphasizes that he does not contend the instructions on asportation misstated the law, just that the difference between aggravated kidnapping asportation and simple

---

[5] Appellant argues that California appellate courts have not yet decided "the standard by which prejudice flowing from the failure to instruct the jury on all applicable lesser included offenses should be evaluated—the federal constitutional *Chapman* standard [*Chapman v. California* (1967) 386 U.S. 18, 24] or the state law standard of *Watson*." For this contention, he cites *People v. Milbrook* (2014) 222 Cal.App.4th 1122 and *People v. Moye* (2009) 47 Cal.4th 537. But those cases arose in the context of failure to instruct on a crime of passion manslaughter theory in a murder case, a scenario that arguably may be characterized as one resulting in incomplete instructions on the elements of the offense charged—malice murder. Whether the *Chapman* or the *Watson* standard of prejudice applies in that situation, at least in a non-capital case, was a question left open in *Breverman* (see *Milbrook, supra*, 222 Cal.App.4th at p. 1144, citing *Breverman, supra,* 19 Cal.4th at p. 170, fn. 19), but it is not implicated here.

kidnapping asportation, on this record, was so difficult to grasp and so consequential to him that it was a violation of due process for the court not to give a clarifying instruction.

The instructions at issue were taken unmodified from CALCRIM No. 1203 (Aggravated Kidnapping for Rape) ["As used here, substantial distance means more than a slight or trivial distance. The movement must have increased the risk of physical or psychological harm to the person beyond that necessarily present in the rape. In deciding whether the movement was sufficient, consider all the circumstances relating to the movement."], and CALCRIM No. 1215 (Simple Kidnapping) ["Substantial distance means more than a slight or trivial distance. In deciding whether the distance was substantial, you must consider all of the circumstances relating to the movement. Thus, in addition to considering the actual distance moved, you may also consider other factors such as whether the distance the other person was moved was beyond that merely incidental to the commission of rape, whether the movement increased the risk of physical or psychological harm, increased the danger of a foreseeable escape attempt, or gave the attacker a greater opportunity to commit additional crimes, or decreased the likelihood of detection."]. Appellant does not point to any particular deficiency in these instructions. He simply contends they were hard to understand and apply in the context of this case without further guidance. We do not agree. When the instructions are read as a whole, the distinction between asportation for purposes of simple kidnapping, on the one hand, and asportation for purposes of aggravated kidnapping, on the other hand, was phrased plainly enough for the jury to grasp.

We see nothing on this record to overcome "the usual presumption that jurors are able to correlate, follow, and understand the court's instructions . . . ." (*People v. Ibarra* (2007) 156 Cal.App.4th 1174, 1190.) The jury asked no questions, and nothing in its verdicts suggests confusion or lack of comprehension. Appellant points out that the prosecutor told the jury in closing argument that simple kidnapping and aggravated kidnapping contain "essentially the same elements but without the purpose of intending to commit rape." But if the prosecutor made a misleading argument to the jury about the applicable law, appellant's trial counsel should have objected and sought a curative

14

instruction. He failed to do so and therefore waived any ability to raise the issue on appeal. (See *People v. Wilson* (2008) 44 Cal.4th 758, 800 ["To preserve a claim of prosecutorial misconduct, a defendant must make a timely and specific objection. Failure to do so forfeits the issue for appeal."].) Given the force and weight of the evidence against appellant, we fail to see how a more fulsome explanation of asportation would have improved his chances of avoiding conviction for aggravated kidnapping.

## III.    DISPOSITION

Appellant's conviction on count 3, for false imprisonment by force or violence, is reversed. In all other respects, the judgment is affirmed.

_____
Streeter, J.

We concur:


_____
Ruvolo, P.J.


_____
Rivera, J.

A142077/*People v. Velasquez*

16